IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**United States of America ex rel.**          )
**THOMAS POWERS,**                            )
                                              )
       Petitioner,                    )
                                              )
   v.                                     )          No. 3:06-cv-50030
                                              )
**KEITH ANGLIN, Warden, ROGER WALKER,**       )
**IDOC Director, and LISA MADIGAN,**          )
**Illinois Attorney General,**               )
                                              )
      Respondents.                   )

<u>**MEMORANDUM OPINION AND ORDER**</u>[1]

Petitioner Thomas Powers brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For all the reasons that follow, his petition is denied.

Petitioner was tried and convicted in the Circuit Court of Winnebago County of attempted aggravated criminal sexual assault and aggravated unlawful restraint. The complaining witness alleged that petitioner attacked her with a knife and attempted to sexually assault her. Petitioner received a twenty-five year prison term for the attempted sexual assault, and he did not receive a sentence for unlawful restraint because the trial court held that the latter conviction merged into the former.

---

[1] Keith Anglin has replaced Nedra Chandler as warden of the Danville Correctional Center and thus is substituted as the respondent in this action. Roger Walker and Lisa Madigan are dismissed as respondents. *See Hogan v. Hanks*, 97 F.3d 189, 190 (7th Cir. 1996) (proper respondent is warden of facility).

After his appeals, his multiple *pro se* state postconviction petitions, his petition for relief from judgment, and his state habeas corpus petitions were unsuccessful, petitioner filed a *pro se* § 2254 petition, raising the following claims:

I. Petitioner did not receive a full and fair hearing on his Fourth Amendment claim because: (a) trial counsel was ineffective for failing to call petitioner's wife to testify that there was no consent to search; (b) appellate counsel was ineffective for not claiming that the initial search was not justified by any exigency and that the police moving evidence (a clipboard) to fit the crime as reported by the victim violated the inevitable discovery rule; (c) the appellate court erred in finding that the knife was in plain view; (d) appellate counsel was ineffective for not challenging this ruling in a motion to reconsider; and (e) police lacked probable cause; there was no consent to search; there were not exigent circumstances; there was no justification for a protective sweep; police had no search warrant; the inevitable discovery rule did not apply; and there is no evidence that petitioner was given *Miranda* warnings when he was handcuffed and taken to the police station;

II. Appellate counsel was ineffective for not claiming that: (1) trial counsel was ineffective for failing to call: (a) two police officers to testify that they overheard a privileged conversation between petitioner and his attorney about drugs and money and that they revealed this information to the victim, which should have allowed the defense to cross-examine the victim about use of illegal drugs and prescription medication; and (b) Kim Wallschaeger, a prospective juror, who knew the victim had psychological problems; and (2) the trial judge abused his discretion by not allowing petitioner to cross-examine the victim about illegal drug usage and prescription medication;

III. Petitioner was entitled to an evidentiary hearing on his postconviction claim that trial counsel was ineffective in failing to accurately advise him about the State's plea offer because when the State offered him a deal of fourteen years of imprisonment, counsel advised him that he would have to serve 85% of the sentence rather than 50%; had he been correctly informed, he would have

2

accepted the deal; and

IV. The appellate court should have investigated the conflict between postconviction appellate counsel and petitioner because petitioner presented a pro se supplemental brief that included several issues that counsel refused to include in his brief.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *see also Williams v. Taylor*, 529 U.S. 362, 367 (2000). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams*, 529 U.S. at 404. To demonstrate an "unreasonable application" of clearly established federal law, a habeas petitioner must establish that the state court unreasonably applied the controlling legal rule to the facts of the case. *Id.* at 407. The state court's application of Supreme Court precedent must be more than incorrect or erroneous. Rather, it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002) (state court decision must lie "well outside the boundaries

3

of permissible differences of opinion").

Before a federal court will consider a habeas corpus petition, a petitioner must satisfy several requirements, including the exhaustion of state remedies and the avoidance of procedural default. Procedural default refers primarily to two situations. The first occurs when the petitioner presents federal claims in his habeas petition that he did not "fairly present" to the state courts, thereby depriving the state courts of the first opportunity to address the claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). A petitioner's failure to fairly present each habeas claim to every level of the state courts in the time and manner required leads to a default of the claim, thus barring a federal court from reviewing the claim's merits. *Boerckel*, 526 U.S. at 848. The second occurs where the state court bases its judgment on a finding of procedural default or waiver under state law, where such grounds are "independent of the federal question and adequate to support the judgment." *Franklin v. Gilmore*, 188 F.3d 877, 881 (7th Cir. 1999). A federal court, however, may excuse a procedural default if a petitioner can show either cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

4

**A.   Claim Two**

In his second claim, petitioner alleges ineffective assistance of counsel and trial court error connected to alleged drug use and psychological problems of the victim.  Respondent argues that this claim is procedurally defaulted.  I agree.  While petitioner presented dozens of claims to the state trial court, he only filed two petitions for leave to appeal ("PLA") to the Illinois Supreme Court.  Because neither of these PLAs contained the claims asserted in Claim Two, the various claims in Claim Two are procedurally defaulted. *See Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) (habeas petitioner who failed to assert his claim at each level of state court review has procedurally defaulted his claim).[2]

A federal court may excuse a procedural default if a petitioner can show either cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in

---

[2]   Petitioner filed a May 16, 2011 "Petition for Leave to Appeal" in which he raised "Point 1" and "Point II."  "Point I" stated that the appellate court erred by failing to investigate an alleged conflict between petitioner and his appellate counsel, where counsel refused to raise on appeal all claims from petitioner's *pro se* "Supplemental Brief."  Petitioner now attempts to argue in reply that he filed his "Supplemental Brief" with the Illinois Supreme Court *as a PLA*.  This is not the case.  In the PLA, petitioner stated that he attached his "Supplemental Brief" to support his assertion that the alleged conflict necessitated a hearing.  Because the focus of the PLA itself is on the appellate court's failure to hold a holding, I do not read the PLA as including all the various claims in petitioner's "Supplemental Brief."

a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

To the extent petitioner argues that he is actually innocent of the crimes, he has not put forward evidence to satisfy this extremely demanding standard. The "fundamental miscarriage of justice" exception is limited to the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Schlup v. Delo*, 513 U.S. 298, 321 (1995). Such instances of actual innocense are "extremely rare." *Id.* In order to demonstrate actual innocence in a collateral proceeding, a petitioner must present "new reliable evidence that was not presented at trial." *Id.* at 327-28. A petitioner who asserts actual innocence to excuse procedural default must establish that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. As the Seventh Circuit has said, "To demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005).

First, and most importantly, petitioner cannot attempt to show actual innocence because he has not put forward any "new reliable evidence" that was not produced at his original trial. *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003). Second, even if I were

to excuse this requirement, petitioner has failed to show that he is "actually innocent" and that no reasonable juror would have found him guilty. Petitioner argues that this was a "he said; she said" case and that the complaining witness lied on the stand. His main argument is that the state failed to prove that he took a "substantial step" towards penetration of the complainant (which is, he argues, a required element of Attempt Aggravated Criminal Sexual Assault). He also asserts that he never used a knife on the victim. However, petitioner himself points out that the complaining witness testified at trial that, during a struggle, petitioner pulled her pants down around her thighs multiple times. Further, she testified that she received multiple slashes on her hands. Essentially, petitioner argues that this witness lied on the stand, and that he is innocent. Despite petitioner's assertion, the jury believed the testimony of the complaining witness and found petitioner guilty. In light of the evidence presented at trial, and ultimately believed by the jury, he has failed to show that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."

Finally, to the extent petitioner attempts to argue in his reply brief that ineffective assistance of counsel was "cause" for the default, such an argument fails. Ineffective assistance of counsel can constitute "cause" for the purpose of procedural

7

default.  *See United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1132 (7th Cir. 1990).  Before a petitioner can use ineffective assistance of counsel as cause for procedural default, however, "he must first present this claim as an *independent claim* to the state courts either on direct appeal or in post-conviction proceedings." *Lemons v. O'Sullivan*, 54 F.3d 357, 360 (7th Cir. 1995) (emphasis added).  Because petitioner did not present this claim to all levels of the state courts, he may not now argue that his counsel's ineffectiveness constituted "cause" for the default.

### B.   Claim Four

In his fourth claim, petitioner argues that the appellate court should have investigated the alleged conflict between postconviction appellate counsel and petitioner.  Petitioner argues that his appellate counsel refused to argue certain claims on appeal, and that, as a result, the appellate court should have accepted and considered petitioner's *pro se* "Supplemental Brief." Respondent argues that this claim is procedurally defaulted. Specifically, respondent argues that although this claim was presented to the Illinois Supreme Court in a PLA, it was never presented as having any federal basis.  As a result, petitioner failed to "fairly present" this claim – as a federal claim – to the Illinois Supreme Court.

Section 2254 mandates that a habeas petitioner "fairly present" all issues, and their federal constitutional bases, to the

state judiciary. *See Lockheart v. Hulick*, 443 F.3d 927, 929 (7th Cir. 2006). A claim is not fairly presented if the state court pleading does not "cit[e] any case that might have alerted the court to the alleged federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 33 (2004). "[F]or a constitutional claim to be fairly presented to a state court, both the operative facts and the controlling legal principles must be submitted to that court." *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992). "A habeas petitioner must provide the state courts with a fair opportunity to apply constitutional principles and correct any constitutional error committed by the trial court." *Id*. at 1474.

In assessing whether a petitioner fairly presented the habeas claim in state court, a court must consider four factors: (1) whether petitioner relied on federal cases that engage in a constitutional analysis; (2) whether petitioner relied on state cases that apply a constitutional analysis to similar facts; (3) whether petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation. *See Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010).

I agree with respondent that none of these factors weighs in petitioner's favor. Petitioner argued to the Illinois Supreme Court that the Illinois trial court had an obligation to inquire

into *pro se* filings by counseled defendants under limited circumstances. Petitioner never cited a federal case or constitutional provision. The single Illinois case petitioner cited in his brief did not include any clear citation to federal authority concerning hybrid representation. In his PLA, petitioner did not assert his claim in such a manner as to call to mind a specific constitutional right, nor did petitioner allege a fact pattern within the mainstream of constitutional litigation. Rather, petitioner's claim concerns the appellate court's decision to enforce a state-law bar on hybrid representation. Thus, this claim was never presented as a federal claim to the state courts and is barred here.

For all the reasons given with respect to Claim Two, petitioner has failed to put forward any persuasive argument that an exception to procedural default applies here. Claim Four is thus procedurally defaulted.

## C.  **Claim One**

In his first claim, petitioner argues that his Fourth Amendment rights were violated. Respondent argues that this claim is barred by *Stone v. Powell*, 428 U.S. 465 (1976).

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court established a general rule that criminal defendants may not seek collateral review of Fourth Amendment exclusionary rule claims under § 2254 if they received "an opportunity for full and fair

litigation of" their Fourth Amendment claims in state court.  The Seventh Circuit has held that such an opportunity has been provided when: (1) the petitioner has "'clearly informed the state court of the factual basis for that claim and has argued that those facts constitute a violation of his fourth amendment rights, and (2) the state court has carefully and thoroughly analyzed the facts and (3) applied the proper constitutional case law to the facts.'" *Hampton v. Wyant*, 296 F.3d 560, 563 (7th Cir. 2003) (quoting *Pierson v. O'Leary*, 959 F.3d 1385, 1391 (7th Cir. 1992)).

Petitioner filed pretrial motions to suppress evidence and the search warrant, and the state trial court denied those motions after an evidentiary hearing.  The trial judge determined that the police had probable cause to arrest petitioner after he gave his consent to search and that, assuming that consent was either not given or revoked, there were exigent circumstances present. Further, the court found, even if there was no consent, the evidence seized was subject to the doctrine of inevitable discovery.  On appeal, the state appellate court agreed with the trial court's findings.

Based on the above, the state provided "an opportunity for full and fair litigation of" petitioner's Fourth Amendment claim. Petitioner fails to point out any deficiencies in the state court proceedings.  Rather, he asserts that the state court reached the wrong result.  Such an argument cannot overcome the *Stone* bar.  *See*

11

*Watson v. Hulick*, 481 F.3d 537, 542 (7th Cir. 2007) (where petitioner presented his Fourth Amendment claim to state court, federal court will not consider whether state court "got the decision right" absent a "subversion of the hearing process").

In addition to the allegations concerning errors made by the trial court, Claim One also includes the following allegations: (a) trial counsel was ineffective for failing to call petitioner's wife to testify that there was no consent to search; (b) appellate counsel was ineffective for not claiming that the initial search was not justified by any exigency and that the police moving evidence (a clipboard) to fit the crime as reported by the victim violated the inevitable discovery rule; and (c) appellate counsel was ineffective for not challenging the trial court's ruling that the knife was in plain view in a motion to reconsider. Because these three claims were never raised in any PLA to the Illinois Supreme Court, they are procedurally defaulted. As explained above, petitioner cannot show that any exception applies here and the claims are thus barred.

## D.    Claim Three

In petitioner's third claim, he argues that he was entitled to an evidentiary hearing on his postconviction claim that trial counsel was ineffective for failing to accurately advise him about the state's plea offer. Petitioner's claim, to the extent it centers on the need for a hearing, fails because it presents a

question solely of Illinois state law.  Thus, it is not cognizable
on federal habeas review.  *Estelle v. McGuire*, 502 U.S. 62, 67-68
(1991) ("[I]t is not the province of a federal habeas court to
reexamine state-court determinations on state-law questions.").

Reading this claim broadly, petitioner may also be arguing
that his counsel was ineffective for failing to accurately advise
him about the State's plea offer.[3]  Specifically, petitioner
alleges that his counsel mistakenly advised him, during plea
negotiations, that, with good-conduct credit, he would have to
serve 85% of the proposed fourteen-year sentence.  Petitioner
asserts that, in actuality, he would have had to only serve 50% of
that sentence, or a total of seven years.  Petitioner states that
had he known about the 50% rule, he would have accepted the State's
plea offer.

The Illinois Appellate Court concluded that counsel was not
ineffective for failing to inform petitioner of the good-conduct
credit provisions of the Illinois code.  It stated:

> In his affidavit, [petitioner] stated that his trial
> counsel, while on the telephone with assistant State's
> Attorney Mark Karner, told [petitioner] "'that the

---

[3]  Petitioner also stated that "Appellate counsel was
ineffective for not raising that also the trial judge abused his
discretion when claiming the charge for Attempt Aggravated Criminal
Sexual Assault also questioned [sic] if the charge was at 85% and
the state's attorney stating all offers are to be at 85%." Pet. at
8.  While it is not entirely clear what the precise nature of
petitioner's claim is, this claim is procedurally defaulted in any
event as petitioner failed to raise this claim before the state
supreme court.

[S]tate is offering you 14 years and that it would be served at 85%.'" [Petitioner] also alleged that Karner stated at unspecified times "during the trial" and "on the record" that [petitioner's] "charge is to be served at 85%" and that "all offers were at 85%." Without specifying when or where, [petitioner] also alleged that defense counsel told him "that the charge is at 85%." However, [petitioner] claimed that he was eligible to serve only 50%, instead of 85%, of his sentence. Under 3-6-3(a)(2.1) of the Unified Code of Corrections (Code), [petitioner] was eligible to receive "one day of good conduct credit" for each day of his sentence, and each day of credit "shall reduce by one day the prisoner's period of imprisonment." 730 ILCS 5/3-6-3(a)(2.1)(West 2000). Thus, both Karner and defense counsel were incorrect in their statements that [petitioner] would be required to serve 85% of his sentence.

According to [petitioner], the difference between 85% and 50% was "almost 40 months." [Petitioner] then stated that he "never received a proper offer" and that if he had received a proper offer [he] would not have been forced to take this case to trial. [Petitioner] argues that counsel was ineffective because, had counsel advised him correctly regarding the potential good-conduct credit, [petitioner] would have taken the plea offer. However, this argument is a counterfactual conditional, a conclusion based on a false premise. [Petitioner's] premise is that, had his attorney been competent in raising the correct good-conduct credit calculation, the State would have stood by the offer of 14 years with the more generous credit applying. This premise is both speculative and counterintuitive. Not only is there nothing in the record to support this premise, common sense leads one to conclude that the State would have amended its offer upwards when it learned of the proper good-conduct credit calculation. We do not accept [petitioner's] claim, as it is speculative and presumes facts that have not been established.

Defense counsel passed along an offer the State presented that contained an element that did not conform to the applicable statutory scheme. There was no meeting of the minds on that offer, *i.e.*, no acceptance of the State's offer. However, there was a meeting of the minds regarding the State's intention in extending the offer: [petitioner] would serve at least 11.9 years in prison.

14

The State could achieve such an outcome with the proper rate of good-conduct credit by offering [petitioner] a term of approximately 24 years. There simply is no showing of a reasonably probability that, but for counsel's deficient performance, the result of the proceeding would have been different. In the absence of such a showing of prejudice, there is no substantial showing of a constitutional violation, and dismissal of the postconviction petitioner was not error.

Further, the failure to inform a defendant of a consequence of a guilty plea is material only if the consequence is a direct consequence of the guilty plea; a collateral consequence provides no basis for reversal. A direct consequence is one that is definite, immediate, and largely automatic in its effect on a defendant's punishment, while a collateral consequence does not relate to the length of the sentence that is imposed. The focus is on the sentence imposed rather than on the sentence that is ultimately served. In general, collateral consequence [sic] are things beyond the court's control.

In *Frison*, the defendant alleged in his postconviction petition that his trial counsel was ineffective for failing to inform him prior to pleading guilty that he would be required, under section 3-6-3(a)(2) of the Code (730 ILCS 5/3-6-3(a)(2)(West 2000))("truth-in-sentencing"), to "serve at least 85% of his sentence." This court found the defendant's characterization of the applicable Code section to be "ill-taken." The statute makes a defendant "eligible" for good-conduct credit and allows a defendant to reduce his sentence by a certain amount of such credit. "It no more mandates that he serve a certain sentence than the day-for-day good-conduct provisions require a defendant to serve half of his or her sentence." The award of good-conduct credit is contingent on the defendant's behavior while in prison; it is not something that is "definite, immediate, and largely automatic in its effect upon a defendant's punishment." Thus, we concluded that good-conduct credit "is not a direct consequence of a guilty plea." Therefore, counsel was not ineffective for failing to inform [petitioner] of the good-conduct credit provisions of the Code.

Exh. FF at 3-5.

In order for petitioner to prevail on this claim, the appellate court's application of *Strickland v. Washington*, 466 U.S. 668 (1984), must have been objectively unreasonable. Petitioner "must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, he must show that the [Illinois Appellate Court] applied *Strickland* to his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 698-699 (2002) (internal citations omitted).

To establish ineffective assistance of counsel, a petitioner must demonstrate: (1) that his attorney's performance was deficient; and (2) that such representation prejudiced his case. *Strickland*, 466 U.S. at 687. The first prong is satisfied by showing that counsel's performance fell below the "objective standard of reasonableness" guaranteed under the Sixth Amendment. *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688). To satisfy the *Strickland* prejudice element, a petitioner must demonstrate that it is reasonably likely that, but for his counsel's errors, the decision reached would have been different. *Strickland*, 466 U.S. at 696.

The Illinois Appellate Court's conclusion regarding petitioner's claim was not objectively unreasonable. With respect

16

to the deficient performance prong, the appellate court held that because the good-conduct credit issue was a "collateral consequence," and not a "direct consequence," counsel was not deficient in failing to advise petitioner regarding the correct percentage. Respondent argues that this conclusion was entirely reasonable, given the fact that the Seventh Circuit and the Supreme Court have both noted that there is a lot of ambiguity in the lower courts concerning the distinction between direct and collateral consequences.

In *McDonald v. Hardy*, 359 Fed. Appx. 650, 653 (7th Cir. 2010), petitioner, who alleged he acted in self-defense, was given the option by the trial judge to have a second-degree murder jury instruction given in addition to a first-degree murder jury instruction. *Id.* at 652. Petitioner declined to offer the second-degree murder jury instruction, and he was ultimately found guilty of first-degree murder. *Id.* Petitioner argued that his trial counsel was ineffective because counsel failed to inform him that his eligibility for good-time credit would differ depending on whether he was convicted of first- or second-degree murder. *Id.* at 653. In Illinois, a defendant convicted of first-degree murder is ineligible for good-time credit, whereas a defendant convicted of second-degree murder is eligible for the credit. *Id.* The state court, in denying the ineffective assistance claim, noted that an attorney is not ineffective for failing to advise his client of the

"collateral" consequences of a guilty plea; competent counsel only need advice his client of all "direct" consequences. *Id.* at 654. The court concluded that good-time credit is a collateral consequence of a plea because "there is no assurance" that the defendant will receive it. *Id.*

After the district court denied the petition, the Seventh Circuit affirmed. Petitioner argued that the state court erred because information concerning good-conduct credit should be deemed a direct, rather than a collateral, consequence, and that counsel had a duty to advise him of the good-conduct credit consequences. *Id.* The Seventh Circuit stated that such a classification was a "difficult" question, but one that it need not answer. *Id.* at 655. Noting that the U.S. Supreme Court has never addressed the direct vs. collateral distinction, the Seventh Circuit noted that other federal courts of appeals have applied the direct/collateral distinction. *Id.* "[G]iven the difficulty of categorizing good-time credit as a direct or collateral consequence even under federal law, we cannot conclude that the state court's decision that counsel was effective was 'well outside the boundaries of permissible differences of opinion.'" *Id.* at 655 (quoting *Starkweather v. Smith*, 574 F.3d 399, 402 (7th Cir. 2009)).[4]

---

[4] The only difference between this case and *McDonald* is the fact that the lawyer in *McDonald* was silent on the good-conduct credit issue, and the petitioner alleges here that the lawyer actually gave him incorrect information. Recently, however, the U.S. Supreme Court rejected the notion that there should be a

Based on the similarities between *McDonald* and his case, I am convinced that the state appellate court's holding was not objectively unreasonable. I cannot conclude that such a holding lies "outside the bounds of permissible differences of opinion."

**F.  Certificate of Appealability**

Upon entering an order denying habeas relief, a district court should also determine whether a certificate of appealability is warranted. *See* Habeas Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). To obtain a certificate of appealability, a petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court denies a habeas petition on procedural grounds, without reaching the merits of the underlying constitutional claims, the petitioner must show not only that jurists of reason would find it debatable whether petitioner has alleged at least one meritorious claim, but also that jurists of reason would find the procedural ruling debatable. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). With respect to my conclusions that petitioner's claims are procedurally defaulted, I do not conclude that those rulings are debatable among jurists of reason. Likewise, with

---

distinction between active misinformation and a failure to inform in the context of *Strickland* claims at the plea stage. *See Padilla v. Kentucky*, 130 S.Ct. 1473, 1484 (2010). Thus, the holding of *McDonald* is persuasive here.

respect to the remainder of my conclusions (concerning petitioner's Fourth Amendment claim, his alleged entitlement to a hearing, and the ineffective assistance of counsel at the plea stage), I do not conclude that jurists of reason would find those conclusions debatable.

### III.

For all the reasons given above, petitioner's petition under 28 U.S.C. § 2254 is denied.  In light of the fact that petitioner filed his response, his motion for extension of time [43] is denied as moot.  Petitioner's motion for an evidentiary hearing [46] and petitioner's motion for appointment of counsel [45] are denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: April 9, 2012

20